

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

*

John Smith

    8404 Philadelphia Rd       *

    Rosedale MD

    21237

Plaintiff                 *      Case No.:  22-2998

v.

*

Towson University         *

    8000 York Rd,

    Towson, MD         *

    21252

Defendant           *

## COMPLAINT

This filing before the court concerns Defendant's willful ignorance of federal statute and their callousness towards their mentally disabled students.  Plaintiff experienced abuse and a denial of his constitutional rights by Towson University's staff, whom were eager to participate in, or permit, staff misconduct that violated

Plaintiff's civil rights.  Plaintiff has suffered tremendous harm and suffering directly because of Defendant's violation of his civil rights and he asks this court to provide the necessary relief to remediate the damages Defendant's employees caused and to prevent Defendant from violating more students' civil rights in the future.

## Statement of Claim

1. Plaintiff was enrolled in a course with one of Defendant's employees Alfreda Dudley in the Fall 2018 semester.

2. Plaintiff has been formally recognized as a disabled student by Towson University's staff.

3. Dudley has a long documented history of exhibiting abusive and threatening behavior directed towards students based on online reviews dating back to 2012.

4. Many former students in separate online reviews over the course of several years illustrated Dudley's character writing:

   i.   "she is very intimidating"

   ii.  "she doesn't like when you ask questions"

iii.   "this professor was very difficult to deal with"

iv.   "Is rude to the students from the time you walk in till the time you walk out"

v.   "she speaks disrespectfully to students and will not budge"

vi.   "is very DISRESPECTFUL AND RUDE WITH STUDENTS!"[1]

vii.   "[she] insults students who have questions, will not respond to e-mails"

viii.   "she's rude and unapproachable"

ix.   "Condescending, treats every student like they are 5 years old"

x.   "She's close-minded or at least stubborn"

xi.   "this teacher is just nasty"

xii.   "[she] gets upset when people want [clarity]"

xiii.   "I have never written such a bad review for a teacher and I think she definitely deserves it"

xiv.   "One of the rudest individuals I have ever met"

xv.   "This woman is just plain rude and believes she is superior to all others"

xvi.    "WARNING! DO NOT TAKE THIS PROFESSOR!" [1]

xvii.   "she has a BAD ATTITUDE and is EXTREMELY
        unapproachable" [1]

xviii.  "She is NOT helpful and half the stuff she says is
        WRONG!"[1]

xix.    "She will make you miserable, I promise!"

xx.     "flips out on dumb stuff in class"

xxi.    "She talks down to her students"

xxii.   "She does not respect others opinions" [1]

xxiii.  "This woman is a slow poison, she's a witch, DO NOT
        TAKE HER. Chanllenge her belief or views on any issues
        and you will fail the class" [1]

xxiv.   "Makes rules of conduct, then breaks them herself"

xxv.    "If you take her, you may compromise your mental health"

xxvi.   "Horrible attitude, i thought it was a racial thing but no she
        hates everybody"[1]

---

[1] [1] The original formatting was preserved in this quote of the review, which includes excessive
capitalizations and grammatical errors, unless otherwise corrected with brackets

5. Plaintiff made the same observations as these former students did while he was taking the class, even witnessing Dudley delightfully recalling how amusing she thought it was to see a former student, who was a football player at Towson University, crying tears when he received a poor grade

6. Plaintiff made Dudley aware at the beginning of his semester of his disability status after submitting an accommodation form.

7. Dudley's classroom behavior mirrored that of what was described in student reviews above, with Plaintiff observing Dudley teaching blatantly incorrect information about the American judicial system (e.g. Teaching that overruling an objection means to agree with the objector's complaint. and that sustaining an objection means to permit the conduct that's being objected).

8. Dudley forced students into group projects and vehemently refused to provide any assistance no matter how severe the issues were.

9. Plaintiff and his group partner, Alexis, were assigned to a group that refused to communicate or participate in any work.

10. Plaintiff and Alexis were then forced to complete the work that over 10 other students were expected to complete together as a team, which included writing 20 pages of content and prepare for a mock trial each week.

11. Stressed and exhausted, Plaintiff and Alexis both agreed that they needed an intervention from Dudley because the other group members were piggybacking off of their work and, under the current grading scheme, failing to complete the entire project on behalf of the other group members would've resulted in failing grades for both Plaintiff and Alexis.

12. During the conversation, Dudley made it abundantly clear that she had no interest in providing help or assistance by screaming obscenities and both Plaintiff and Alexis, and yelled that they have to figure it out themselves.

13. Alexis became intimidated by Dudley's increasingly erratic behavior and expressed her desire to leave, but Plaintiff asked her to stay so they could speak up for themselves together.

14.  Plaintiff argued that Dudley wasn't offering any solutions to the problems they were experiencing, and that there wasn't anything they could do to alleviate the issue of having 2 students forced to complete the work meant for 10 people.

15.  Dudley began to make personal insults targeting Plaintiff's mental disabilities, saying "there's something wrong with you upstairs" and "you got some issues."

16.  Dudley then threatened Plaintiff by saying "I'm going to do whatever it takes to get you removed from this course"

17.  When Plaintiff asked for suggestions on what he and Alexis could do about their issue for the final time, Dudley spontaneously threatened "Keep it up and I'm going to call the police!"

18.  Plaintiff responded by genuinely asking "What did I ever do to have the police called?"

19.  Dudley ignored Plaintiff's question and walked over to a school computer while mumbling to herself "I'm calling the police..."

20. Plaintiff himself felt the need to call Towson University's campus police department to put the brakes on Dudley's belligerent behavior, and he reasonably felt that she would lash out at him if she knew he was calling the campus police too, so he left the room for his own safety to call the police in the stairwell.

21. The response that followed by Towson University's staff can only be described as something that was straight out of an episode of The Twilight Zone, where their idea of justice is to craft whatever narrative is necessary to continue victimizing the victims of the situation and empower the liars and abusers.

22. When the police arrived, Dudley began to spout off ambiguous claims of being "threatened" in an unspecified manner and aggressively sought to reverse the dynamics of the situation.

23. Dudley was also quick to break FERPA guidelines by weaponizing Plaintiff's mental disabilities and using them to defame Plaintiff's character and prejudice the officer's into

assuming Plaintiff is a dangerous individual based on his mental disability status.

24. Officer Glenn Merritt immediately presumed Plaintiff to be a dangerous individual after learning about his disability status, and later expressed in an interview that he felt the need to pry into Plaintiff's mental disabilities fearing he'd kill someone or himself.

25. Glenn Merritt also mistakenly believed Plaintiff to be someone else after wrongfully associating him with this other individual based on their disability status.

26. Merritt began to mischaracterize Plaintiff's character in front of Dudley and Alexis as this other individual he was thinking of, and wrongly accusing Plaintiff of having "problems."

27. Several officers arrived to laugh and gossip about Plaintiff's mental disability status, with all of them wrongfully believing Plaintiff to be another mentally disabled individual and all of them collectively ignored Plaintiff's repeated insistence that they were mistaking him for someone else.

28. The officers berated Plaintiff telling him he needed to get his medication checked, wrongly calling him by a name sounding like "Craig" or "Greg", threatening to run a name check to expose him as being a liar, and screaming in his face to stop crying in the face of Dudley's abuse and the hostility exhibited towards him being mentally ill.

29. Dudley, in spite of her claims that she was somehow "threatened" by Plaintiff, had no problems walking by Plaintiff on the way to the stairwell and gave him a malicious smirk as she walked past him.

30. After being forced to miss a class due to the officers' detainment of Plaintiff, the officers told him he was free to leave and asked what he would do.

31. Plaintiff expressed he wished to sit alone in the stairwell after being abused and traumatized by Dudley and the campus police.

32. Officer Merritt then told Plaintiff he wouldn't let him do that, and forced Plaintiff to go to Towson University's counseling center.

33.   For the rest of the day and the following days, Plaintiff could
      not stand properly without easily losing balance, he lost his
      appetite, he was unsafe driving and had to pull over several
      times when driving home that day, he was forced to miss his
      Thursday classes due to his inability to drive safely, he laid in
      bed during his time at home staring at the ceiling, and he
      would respond extremely quietly to others that would
      converse with him while as he was lost in thought.

34.   Plaintiff eventually dropped the class with Dudley due to the
      lack of support from campus police, the continuing abuse that
      would've ensued, and the grueling workload that would've
      resulted in extreme stress or a failing grade.

35.   Towson University's campus police reported Plaintiff to the
      school's Office of Student Conduct for speaking
      disrespectfully to Dudley.

36.   Remarkably, the Office of Student Conduct twisted this into
      being a "threat" of some kind and re-traumatized Plaintiff by
      sending him a letter lying about the police reporting him for

"acting in a threatening manner" and "disruptive in the
classroom"

37. The Student Conduct Director, Allison Peer, railroaded
Plaintiff into being declared guilty so that Dudley could get her
wish to permanently bar him from ever taking a course of
Dudley's merely because he expressed grievances with her
about the class.

38. Peer expressed during their conduct meeting, with Plaintiff's
father being present as a witness, that she thought it'd be best
if Plaintiff sought psychological counseling to prevent such
issues from happening again, signifying animus towards his
mental disability and believing that they act as some sort of
"cure" that'll reduce his need to raise complaints with his
professors.

39. Peer also issued Plaintiff a no contact order between him and
Alexis to prevent Plaintiff from discussing the incident with her
as a witness. Peer claimed in the same order that this no
contact order could be reviewed upon request and rescinded
if they deem appropriate.

40. Despite the glaring flaws, baselessness, and prejudice swept up in the accusations levied at Plaintiff, Peer rushed to conclude that Plaintiff was guilty of "threats of violence" and disrupting an unspecified university operation. Peer could not describe what exact harm was allegedly being threatened nor did she specify what class, club, or any other college activity was disrupted by Plaintiff.

41. Remarkably, Peer, in the same letter that coerced Plaintiff in writing a confession letter to admit fault in trying to raise a complaint with the professor under threat of further punishment, and she focused on scolding Plaintiff for expressing an issue in the classroom with Dudley saying that he had no right to "engage in an argument with a faculty member regarding their teaching style or choices."

42. Plaintiff sought resolve through Towson University's Office of Inclusion & Institutional Equity after they assured him they'd look into discrimination concerns and other civil rights of his that might have been violated.

43.  Office of Inclusion & Institutional Equity investigator, Patricia
     Bradley, reassured Plaintiff and his father that their office
     takes a broad approach in their investigations, and that they
     look to see if any type of illegal activity has occurred beyond
     mere discrimination of a protected class.

44.  In their investigative process, Plaintiff learned that Alexis was
     manipulated into falsely testifying to the police that she was
     afraid Plaintiff would hurt her or Dudley, and explicitly
     specified that she felt there was no need for Dudley to call the
     police.

45.  Plaintiff also read the interview transcripts of conflicting stories
     amongst officers and their expressed prejudice towards
     Plaintiff's mental disability status.

46.  Dudley was also uncooperative and told a wildly inaccurate
     detail of events that conflict with her prior statements, with her
     at one point even flat out refusing to converse with the
     investigators.

47.  After over a year of waiting, the Office of Inclusion &
     Institutional Equity's slow and arduous process concluded and

they remarkably concluded that there was insufficient

evidence of discrimination, yet they also concluded that they

recommended anti-discrimination training for staff members in

regards to disabled students. Somehow their staff needs anti-

discrimination sensitivity training of disabled students, yet

there also was no discrimination that occurred.

48.  After learning that Alexis did not truly fear Plaintiff and

recognizing the complete baselessness of Peer's no contact

order, Plaintiff went to request for the no contact order to be

reviewed and removed.

49.  Peer retaliated against Plaintiff by revoking his right to a

review of the no contact order and pretending the offer was

never available despite being clearly written in her email.

50.     Plaintiff also sought to have a FERPA review of libel

college disciplinary records that wrongfully accused him of

"threatening" others and disrupting an unspecified event, yet

despite such informal hearings being guaranteed to students that

have an issue with FERPA records that are "inaccurate,

misleading or unlawful information", the university denied Plaintiff

his right to a formal hearing through an invention of its own interpretation of FERPA law that doesn't include college disciplinary records.

## Causes of Action

### Count 1 – Section 504 of the Rehabilitation Act

The most recent violation for these claims originates on November 18th, 2019 when the Office of Inclusion denied Plaintiff a review of his appeal of the investigation into these complaints. Plaintiff was interrogated by Towson University police that sought to pry into his mental disabilities. Since he was denied the ability to attend the class he had during this time due to his disability status, this serves as a violation of Section 504 of the Rehabilitation Act.

Plaintiff was also denied an accommodation during his hearing with Allison Peer by having his request for a trashcan be ignored. Plaintiff wanted a trash can as a precaution in case his disability condition induced vomiting, but Peer callously ignored Plaintiff's pleas and committed another violation.

## Count 2 - First Amendment

The most recent violation for these claims originates on November 18th, 2019 when the Office of Inclusion denied Plaintiff a review of his appeal of the investigation into these complaints and in January 2020 when Alison Peer sent her email where she refused to review Plaintiff's need of the no contact order. Plaintiff was unfairly punished for expressing criticism and concern to a classroom professor with Peer crafting the pretext that it was due to some type of "threat" involving pointing and the way Plaintiff allegedly "moved [his] body." But as the real motive for the punishment was that of criticizing a college professor, this establishes the first violation of Plaintiff's first amendment rights.

Plaintiff was also unconstitutionally barred by Alison Peer from speaking to Alexis for unjustified reasons. Peer alleges it was made upon Alexis' request, but if this is true, a mere request doesn't establish justification for imposing the order, and Peer's case is greatly weakened by the fact that Alexis has expressed that she never felt threatened at all from Plaintiff. Peer also originally wrote that Plaintiff

could have the order re-reviewed upon request, yet this was
mysteriously changed after Plaintiff filed a complaint against Peer for
discrimination, leading to a renewed reinstatement of an unlawful no
contact order that violates Plaintiff's first amendment rights.

Peer also encroached on Plaintiff's first amendment rights after
coercing Plaintiff into writing a "reflection paper", with Peer demanding
that Plaintiff admit wrongdoing despite her knowing Plaintiff rejects
Peer's fictitious version of events. Peer demanded this false
confession paper of thoughts and beliefs Plaintiff did not truly feel
under threat of additional punishments, leading to another first
amendment violation.

## Count 3 – Sixth Amendment

The most recent violation for these claims originates on
November 18th, 2019 when the Office of Inclusion denied Plaintiff a
review of his appeal of the investigation into these complaints and in
January 2020 when Alison Peer sent her email where she refused to
review Plaintiff's need of the no contact order. Peer barred Plaintiff
from being able to obtain witnesses in his favor and to confront

witnesses being used against him. Peer barred Plaintiff from reaching out to his classmate Alexis under threat of punishment. Peer also refused to speak with the vast majority of students he submitted as witnesses in his favor, commenting that she'd only reach out to two of the ones provided in the list. Defendant impeded his ability to speak with Alexis under threat of punishment, because if Plaintiff did speak to Alexis, he would've learned that she truly never felt afraid of him as Peer wishes to claim. It's obvious that Peer wished to abuse the no contact order as tool to subvert Plaintiff's sixth amendment rights and prevent him from learning the truth from Alexis.

**Count 4 – Fourteenth Amendment**

The most recent violation for these claims originates on November 18th, 2019 when the Office of Inclusion denied Plaintiff a review of his appeal of the investigation into these complaints and in January 2020 when Alison Peer sent her email where she refused to review Plaintiff's need of the no contact order. Defendant denied Plaintiff equal protection under the law after refusing to address any of Dudley's egregious misconduct, that violated numerous college

policies and laws, while simultaneously manufacturing a conduct investigation against Plaintiff that wrongfully concluded he was "threatening" and "disruptive" for the same documented behavior that Dudley exhibited towards Plaintiff and the rest of her students. It's clear that the college staff believe in stereotypes about the mentally disabled being dangerous, that Peer's narrative about Plaintiff "threatening" others has collapsed, and that all of the behavior that Peer deemed to be "threatening" was exhibited by Dudley, yet Dudley has received no punishments or reprimands. College staff have also illegally refused to allow Plaintiff to initiate appeal procedures for the no contact order, the Office of Inclusion's investigation, and they have also refused to grant him the guaranteed rights to a formal hearing regarding FERPA protected documents. For these reasons, Defendant has violated Plaintiff's fourteenth amendment rights by failing to provide him with equal protection under the law.

**Count 5 – FERPA**

The most recent violation for these claims originates on November 18th, 2019 when the Office of Inclusion denied Plaintiff a review of his appeal of the investigation into these complaints. Alfreda Dudley violated Plaintiff's FERPA rights after illegally disclosing his disability condition she learned from his accommodation form to Towson University police. Allison Peer also violated Plaintiff's FERPA rights by illegally disclosing Plaintiff's disciplinary verdict to the Department Chair of Computer & Information Sciences, Sidd Kaza, and to Plaintiff's academic advisor, Heather Bohle. Finally, Towson University also violated Plaintiff's FERPA rights by denying him a formal hearing to correct the grossly inaccurate disciplinary records and his right to be able to add his own statement regarding the FERPA protected educational records.

## Count 6 – Retaliation

The most recent violation for these claims originates on November 18th, 2019 when the Office of Inclusion denied Plaintiff a review of his appeal of the investigation into these complaints and in January 2020 when Alison Peer sent her email where she refused to

review Plaintiff's need of the no contact order. Alison Peer unlawfully retaliated against Plaintiff by revoking his ability to have the no contact order reviewed after he filed a complaint to the college's Office of Inclusion & Institutional Equity. There's a clear correlation that this order could be reviewed prior to Plaintiff's complaint, and was only mysteriously rescinded after Plaintiff filed his complaint against Peer.

The head of the college's Office of Inclusion & Institutional Equity also retaliated against Plaintiff by ignoring his appeal of the investigation's results and refusing to review it.  The excuse that was invented was that Plaintiff allegedly didn't clearly label his appeal properly, but this is disproven by the fact that it was clearly labeled in the manner that they were expecting and how they made no effort to reach out and offer Plaintiff a chance to remedy any format issues they had with his appeal prior to the flat out refusal to review it.

## Relief

These events have traumatized Plaintiff and have since exacerbated his mental disabilities of depression, anxiety, and moderate PTSD. Plaintiff asks the court for preliminary and permanent injunctive relief that would change college policy to include language that explicitly bars the unlawful conduct previously mentioned, the expungement of the records pertaining to the farce of a disciplinary hearing Plaintiff had to endure, declaratory judgement, and monetary compensation that would reimburse Plaintiff with any legal fees, psychological counseling fees, the tuition he spent on taking and dropping Dudley's class, lost wages after Defendant made it untenable for Plaintiff to obtain his college degree and pursue his career, and other relief the court deems fit to remedy the harm caused and to prevent future harm from occurring to other students.

Jury trial demanded.

Respectfully submitted,

John Smith
8404 Philadelphia Rd
RosedaleMD
21237


November 18th, 2022