IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHRISTOPHER ENSMINGER,** | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 1:22-cv-02998-JRR |
| **TOWSON UNIVERSITY,** | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

*Pro Se* Plaintiff Christopher Ensminger filed this action against Defendant Towson University alleging disability discrimination, violations of the First, Sixth, and Fourteenth Amendments and the Family Educational Rights and Privacy Act ("FERPA"), and retaliation. Pending before the court is Defendant's Motion to Dismiss. (ECF No. 27; "the Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

**I.   BACKGROUND**[1]

In the Fall of 2018, Plaintiff was a student at Towson University, enrolled in a course taught by Defendant's Professor Alfreda Dudley. (ECF No. 5 ¶ 1; the "Complaint.") Plaintiff and his peer met with Professor Dudley during the semester to discuss a class assignment. *Id.* ¶¶ 11–19. Professor Dudley knew Plaintiff was a person with a disability because he submitted an accommodation form to her at the beginning of the course. *Id.* ¶ 6. During the meeting, Professor Dudley "scream[ed] obscenities" at both Plaintiff and his peer, made personal insults to Plaintiff

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pleaded facts set forth in the Complaint. (ECF No. 5.)

related to his disability, and threatened to have Plaintiff removed from her course. *Id.* ¶¶ 11–16. Professor Dudley called Defendant's university police department to respond during the meeting. *Id.* ¶¶ 19–22. When the police officers arrived, Professor Dudley informed them of Plaintiff's mental disabilities. *Id.* ¶ 23. The police officers then questioned Plaintiff out of fear that he would kill himself or others, ultimately causing Plaintiff to miss a class due to their detainment. (ECF No. 5 ¶¶ 24, 30.) The police officers also "laugh[ed] and gossip[ed] about Plaintiff's mental disability status" during the detainment. *Id.* ¶ 27. The police officers reported the incident involving Plaintiff to Defendant's Office of Student Conduct. *Id.* ¶ 35. Upon review of the report, the Office of Student Conduct, specifically Director Allison Peer, concluded that Plaintiff was "guilty" of "threats of violence" and "disrupting an unspecified university operation." *Id.* ¶¶ 37, 40. She then recommended Plaintiff seek psychological counseling. *Id.* ¶ 38. Director Peer also issued a "no contact order" between Plaintiff and his above-referenced peer, and stated that the order could be reviewed upon request and rescinded when she deemed appropriate. *Id.* ¶ 39. Director Peer also "coerced" Plaintiff into writing a "confession letter," admitting fault. (ECF No. 5 ¶ 41.)

After the conclusion of the Office of Student Conduct's investigation, Plaintiff reported his concerns of disability discrimination to Defendant's Office of Inclusion and Institutional Equity ("OIIE"). *Id.* ¶ 42. OIIE ultimately found that there was insufficient evidence to conclude that discrimination had occurred in the Office of Student Conduct's investigation of Plaintiff. *Id.* ¶ 47. Thereafter, Plaintiff appealed OIIE's finding. *Id.* at p. 16–22. On November 18, 2019, OIIE denied Plaintiff's appeal for the purported reason that Plaintiff did not clearly label his appeal. *Id.* Then, in January 2020, Plaintiff requested Director Peer review the need for the no contact order,

and Director Peer refused. (ECF No. 5 at p. 21–22.) Plaintiff also requested to review his disciplinary records with Defendant, and Defendant denied him a formal hearing. *Id.* ¶ 50.

On November 18, 2022, Plaintiff filed the operative Complaint in this court. (ECF No. 5; the "Complaint".) The Complaint sets forth six counts: disability discrimination in violation of Section 504 of the Rehabilitation Act (Count I); violations of the First Amendment (Count II); violations of the Sixth Amendment (Count III); violations of the Equal Protection Clause of the Fourteenth Amendment (Count IV); violations of the Family Educational Rights and Privacy Act ("FERPA;: Count V); and retaliation in violation of the Rehabilitation Act (Count VI). *Id.* at p. 16–22.

On August 24, 2023, Defendant filed the Motion. (ECF No. 27.) Defendant moves to dismiss on several grounds: (1) Plaintiff failed to properly serve Defendant; (2) Defendant is immune from suit on Plaintiff's Counts II through IV under the Eleventh Amendment; (3) Plaintiff's Counts I and VI are time-barred; (4) Plaintiff's Counts I and VI fail to state a claim upon which relief can be granted; and (5) Plaintiff's Count V is baseless because FERPA does not confer individual enforceable rights. (ECF No. 27-1 at p. 7–16.)

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(5)

"A motion to dismiss for insufficient service of process is permitted by Federal Rule 12(b)(5)." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *Id.* "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the

3

court." *Id.* (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir.1963) and *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984)).

**B. Federal Rule of Civil Procedure 12(b)(1)**

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendant raises a facial challenge to the court's subject matter jurisdiction, asserting that the doctrine of sovereign immunity bars Plaintiff's First Amendment, Sixth Amendment, and Fourteenth Amendment claims. (ECF No. 27-1 at 8–9.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640,

4

649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

C. **Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. The court, however, is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244 (citing *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979)).

III. **ANALYSIS**

As an initial matter, the court is mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it

does not mean that the court should rewrite the complaint to include claims never presented." *Id.* (citations omitted).

      A.      **Rule 12(b)(5) – Service of Process**

Defendant asserts that Plaintiff's Complaint should be dismissed because he failed to effect proper service. (ECF No. 27-1 at 7–8.)

"Absent effective service of process, a court is without jurisdiction to render a personal judgment against a defendant." *Federal Deposit Insurance Corp. v. Schaffer*, 731 F.2d 1134, 1135–1136 (4th Cir. 1984). "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 515 (D. Md. 2016) (citing *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)).

Defendant is a constituent institution of the University System of Maryland, which is an independent governmental unit of the State of Maryland. *See* MD. CODE ANN., EDUC. §§ 12-102(a)(1)-(3) (the University System of Maryland is "an instrumentality of the State" and "an independent unit of State government"); *id.* § 12-101(b)(6)(ix) (Towson University is a constituent institution of the University System of Maryland).

Federal Rule of Civil Procedure 4(j)(2) provides that "[a] state, a municipal corporation, or any other state created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Maryland Rule 2-124(k) governs service of process on an officer or agency of the State of Maryland, which provides that "[s]ervice is made on an officer or agency of the State of Maryland by serving (1) the resident agent designated by the officer or agency, or (2) the

6

Attorney General or an individual designated by the Attorney General in a writing filed with the Clerk of the Supreme Court."

In the instant case, the U.S. Marshal delivered Plaintiff's summons and complaint to Paula Zyne, an Executive Administrative Assistant in the Defendant's Office of General Counsel . (ECF No. 26.)  Because Plaintiff failed to serve the chief executive officer of the state, a resident agent of the state, or the office of the Attorney General, Plaintiff failed to comply with Federal Rule of Civil Procedure 4(j)(2).  Therefore, Plaintiff's claims against Defendant are subject to dismissal for ineffective service of process.  Even if Plaintiff properly served Defendant, Plaintiff's claims fail for the additional reasons discussed below.

### B.     Rule 12(b)(1) – Eleventh Amendment Immunity

Defendant argues that Plaintiff's First Amendment, Sixth Amendment, and Fourteenth Amendment claims are barred because Defendant is immune from suit under the Eleventh Amendment. (ECF No. 27-1 at 8–9.)

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.  Under the Eleventh Amendment, States generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress.  *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.  We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) ("[S]tate

sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it."). A finding that Defendant enjoys sovereign immunity on claims, presents a jurisdictional bar to the court's adjudicative power on those claims. *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.") (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

With respect to abrogation, "Congress has not abrogated sovereign immunity for § 1983 suits," and thus the remaining question is whether Defendant has waived sovereign immunity. *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Regarding waiver, this court has previously explained:

> [A] State may voluntarily waive its sovereign immunity by invoking federal court jurisdiction, or by making a clear declaration that it intends to submit itself to the jurisdiction of the federal courts . . . .
>
> In the absence of specific legislative authorization, neither the Attorney General for the State of Maryland nor any assistant thereto has any authority to waive Maryland's sovereign immunity in the course of representation of the State, any State entity, or any State officer or employee. As noted by the Fourth Circuit, the Maryland legislature has not authorized counsel for the State to waive sovereign immunity. In fact, Maryland statutory law expressly provides that the Attorney General's representation does not deprive any State officer, State employee, or unit of the State government of any sovereign immunity that is available to the officer, employee, or unit.

*Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 866–67 (D. Md. 2018) (citations omitted).

Here, Defendant is a "constituent institution" of higher education in Maryland and is thus undeniably an instrumentality of the State. *See* MD. CODE ANN., EDUC. §§ 12-102, 12-

101(b)(6)(ix).  Affording Plaintiff's Complaint liberal construction, this court construes his First, Sixth,[2] and Fourteenth Amendment claims as claims brought pursuant to 42 U.S.C. § 1983. Congress has not abrogated the State's Eleventh Amendment immunity with respect to § 1983 claims, and the State has not waived it.  *See Biggs*, 953 F.3d at 241.  Accordingly, sovereign immunity bars Plaintiff's claims for relief under the First, Sixth, and Fourteenth Amendments.

### C. Rule 12(b)(6) – Section 504 of the Rehabilitation Act

Defendant further argues that Plaintiff's claims under Section 504 of the Rehabilitation Act, Counts I and VI, are barred by a two-year statute of limitations.  Alternatively, if Plaintiff's claims are timely, Defendant contends that they should be dismissed because Plaintiff has failed to state a claim upon which relief may be granted.

#### 1. *Statute of Limitations*

As Defendant notes, in *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, the Fourth Circuit discussed what statute of limitations to apply to Rehabilitation Act employment discrimination claims brought in this court.  *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 659 (4th Cir. 2018).   Specifically, the Fourth Circuit explained:

> When a federal statute, like the Rehabilitation Act, does not set forth a statute of limitations, federal courts borrow the state statute of limitations that applies to the most analogous state-law claim. Federal district courts should borrow the limitations period from the state in which the district court sits, as long as doing so is not inconsistent with federal law or policy.
>
> Here, we must determine which Maryland statute is most analogous to [the plaintiff's] Rehabilitation Act claims.  The state statute need not be identical to the Rehabilitation Act, but *it must provide essentially the same rights and remedies*.  We consider whether the state law prohibits the same type of discrimination as the federal law, tracks the federal law's language, and requires the state to promulgate regulations consistent with the federal law.

---

[2] Even in the absence of sovereign immunity, Plaintiff's Sixth Amendment claim fails as a matter of law because Sixth Amendment claims pertain to criminal prosecutions. *See Austin v. United States*, 509 U.S. 602, 608 (1993).

*Id.* (emphasis added) (citations omitted).

The *Ott* court held that the Maryland Fair Employment Practices Act ("MFEPA") is the "appropriate analogous statute to provide the statute of limitations for Rehabilitation Act claims" where the plaintiff alleged employment discrimination under the Rehabilitation Act and the MFEPA provided a right of action for the alleged unlawful employment practice at issue. *Id.* at 659–60 (citations omitted). "[T]he revised MFEPA and the Rehabilitation Act redress discrimination against the same very specific group of persons, and provide the same rights and remedies." *Id.* at 660 (citations omitted).

Conversely, in *Semenova v. Maryland Transit Administration*, the Fourth Circuit held that the MFEPA was not an appropriate analogous statue to provide the statute of limitations for an Americans with Disabilities Act claim arising from allegations of disability discrimination in the provision of public services. 845 F.3d 564, 567–68 (4th Cir. 2017). In that instance, the MFEPA did not provide "substantially the same rights and remedies" as the plaintiff's claim because it "created a cause of action for disability employment discrimination . . . [but] did nothing to modify the rights and remedies of a plaintiff . . . who alleges discrimination in the provision of public services." *Id.*

Notably, here, Plaintiff has not asserted a claim of employment discrimination based on disability, but instead of disability discrimination in his educational program. To apply the statute of limitations included in the MFEPA, the court must conclude that Plaintiff's Rehabilitation Act claims concern "substantially the same rights and remedies" as the MFEPA. *Id.* at 567. That is not the case here, however, where MFEPA does not concern the rights of students in educational programs. Following the Fourth Circuit's approach in *Semenova*, "the closer state-law analog . . . is Maryland's more general statute of limitations, requiring plaintiffs to file civil actions 'within

10

three years from the date it accrues unless another provision of the Code provides' otherwise." 845 F.3d 564, 567 (4th Cir. 2017). Plaintiff filed this action on November 18, 2022. (ECF No. 5.) The court will therefore consider Plaintiff's well-pled factual allegations that occurred on or after November 18, 2019, in determining whether Plaintiff has stated a claim for relief under Section 504 of the Rehabilitation Act.

### 2.  *Failure to State a Claim*

Considering Plaintiff's timely allegations,[3] Plaintiff first alleges that Defendant subjected him to disability discrimination in violation of Section 504 of the Rehabilitation Act when OIIE denied his appeal to review the findings of its investigation into his discrimination complaint. (ECF No. 5 at p. 16.)

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity." 29 U.S.C. § 794. To assert a disability discrimination claim under Section 504 of the Rehabilitation Act, Plaintiff must allege "(1) he has a disability, (2) he is otherwise qualified to participate in [D]efendant's program, and (3) he was excluded from the program on the basis of his disability." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012) (citations omitted). Plaintiff must allege facts to support that he was excluded from Defendant's program "solely by reason of his disability." *Id.* at 461–62 (citations omitted). Absent direct evidence, as is the case here, Plaintiff may meet his burden through the burden-shifting framework in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). For the purposes of its Motion, Defendant specifically

---

[3] Where, as here, Plaintiff alleges discrete acts of discrimination, acts that predate the statute of limitation are time-barred. *Hill v. Hampstead Lester Morton Ct. Partners LP*, 581 F. App'x 178, 181 (4th Cir. 2014).

challenges the third element—that Plaintiff was excluded from the program on the basis of his disability. (ECF No. 27-1 at 13.)

The Fourth Circuit explained in *Sellers by Sellers v. School Board of the City of Manassas, Virginia*:

> We have held that to establish a violation of section 504, plaintiffs must prove that they have been discriminated against—that they were excluded from the employment or benefit *due to discrimination* solely on the basis of the disability. This discrimination requirement is rooted in two parts of the statute's text: plaintiffs must prove that they have either been "subjected to discrimination" or excluded from a program or denied benefits "solely by reason of" their disability.

141 F.3d 524, 528 (4th Cir. 1998) (emphasis in original) (citations omitted). The Fourth Circuit further held that, "at least in the context of education of [children with disabilities]," the plaintiff should allege facts to support a showing that the defendant acted with "either bad faith or gross misjudgment." *Id.* at 529 (citing *Monahan v. Nebraska,* 687 F.2d 1164, 1171 (8th Cir. 1982)).

Here, Plaintiff has neither alleged sufficient facts to support that he was denied any sort of educational benefit when OIIE declined to review his appeal of its investigation into his disability complaint, nor that OIIE's denial was made solely on the basis of his disability status. *See Haplern*, 669 F.3d at 461–62. Plaintiff has thus failed to allege a plausible claim for disability discrimination in violation of Section 504 of the Rehabilitation Act.

Plaintiff next alleges that Defendant subjected him to retaliation seemingly in violation of Section 504 of the Rehabilitation Act. (ECF No. 29 at p. 9.) Plaintiff alleges that Defendant retaliated against him when OIIE denied his appeal to review the findings of its investigation into his discrimination complaint and when Director Peer refused to review the need for the no contact order between Plaintiff and his peer. (ECF No. 5 at p. 21–22.)

"Adopting provisions of the [Americans with Disabilities Act], the [Rehabilitation Act] provides that no person shall retaliate against an individual because that individual engages in activity challenging [Defendant's] alleged discrimination." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001). A *prima facie* case of retaliation requires Plaintiff allege (1) he engaged in a protected activity; (2) Defendant acted adversely against him; and (3) a causal connection between the protected activity and the asserted adverse action. *Id.* at 272. *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).

While Plaintiff need not assert that the alleged retaliatory actions affected the terms and conditions of his engagement or participation in Defendant's program or activity, he still must allege that the actions at issue were "materially adverse—such that they might have dissuaded a reasonable [person] from engaging in protected activity." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018) (citations omitted). The "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006); *see Jennings v. Frostburg State Univ.*, No. CV ELH-21-656, 2023 WL 4567976, at *23 (D. Md. June 27, 2023). "[R]etaliatory adverse actions must cause significant harm to be actionable." *Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 655 (4th Cir. 2023).

Even assuming *arguendo* that Plaintiff's appeal to OIIE and request to review the no contact order were considered protected activity under the law, Plaintiff has not pled sufficient facts to support a claim of retaliation under Section 504 of the Rehabilitation Act. First, with respect to the allegation that OIIE declined to review its investigation upon his appeal, Plaintiff has neither alleged facts to show that the denial of his request itself constituted a "materially

adverse" action that would have dissuaded a reasonable person from engaging in protected activity, nor that there was a causal connection between his alleged protected activity and any alleged adverse action. *See Strothers, supra.* Further, Plaintiff fails to allege facts tending to demonstrate that he was subjected to significant harm as a result of the asserted "adverse actions." *See Israelitt, supra*. Second, with respect to the allegation that Director Peer declined to review the necessity for the no contact order, Plaintiff has again failed to allege facts that Director Peer's decision, on its own, was a materially adverse action that would dissuade a reasonable person from engaging in the same alleged protected activity. Plaintiff has thus failed to meet his burden to allege a plausible claim for retaliation in violation of Section 504 of the Rehabilitation Act.

### D. Rule 12(b)(6) – FERPA

Lastly, Defendant argues that Plaintiff's FERPA claim must fail because FERPA does not confer enforceable rights on individuals. (ECF No. 27-1 at 15–16.) Pursuant to 20 U.S.C. § 1232(g), the Secretary of Education is tasked with enforcing FERPA and responding to violations thereof. 20 U.S.C. § 1232(g). It is well-established that FERPA does not confer "specific, individually enforceable rights," "whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 281, 286 (2002). *See Gaskins v. Baltimore City Pub. Sch.*, JKB-15-2961, 2016 WL 192535, at *8 (D. Md. Jan. 15, 2016), *aff'd sub nom. Gaskins v. Abiodun*, 649 F. App'x 307 (4th Cir. 2016); *Loper v. Howard Cnty. Pub. Sch. Sys.*, No. CV ELH-20-3789, 2021 WL 3857857, at *9 (D. Md. Aug. 27, 2021). Therefore, Plaintiff cannot assert a claim under FERPA in this action.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 27) will be GRANTED.

/S/

_____
Julie R. Rubin
United States District Judge

February 5, 2024